UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CARLOS RIVERA,

        Plaintiff,

-vs-

CITY OF MIAMI POLICE DEPARTMENT;
JULIO PINERA, Individually and
as Police Officer for City of Miami;
BARTHOLOMEW GUNDERMAN, Individually
and as Police Officer for City
of Miami; SGT. CLEMENTE, Individually
and as Police Officer for City of
Miami; VINCENT FARRELL, Individually
and as Police Officer for City of
Miami; X, Individually and as Police
Officer for City of Miami; and Y,
Individually and as Police Officer
for City of Miami,

        Defendants.

_____/

CASE NO. **99-1330**

**CIV-MOORE**

MAGISTRATE JUDGE
O'SULLIVAN

FILED BY _____ D.C.

99 MAY 10 PM 4:32

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

## COMPLAINT

    Plaintiff, CARLOS RIVERA, through counsel, hereby sues

the CITY OF MIAMI POLICE DEPARTMENT, JULIO PINERA,

Individually and as Police Officer for City of Miami;

BARTHOLOMEW GUNDERMAN, Individually and as Police Officer

for City of Miami; SGT. CLEMENTE, Individually and as Police

Officer for City of Miami; VINCENT FARRELL, Individually and

as Police Officer for City of Miami; X, Individually and as

Police Officer for City of Miami; and Y, Individually and as

Police Officer for City of Miami, alleging:

    1.   This is an action to vindicate violations of civil

rights pursuant to 42 U.S.C., Section 1983, and in tort for

false arrest and battery.

SCANNED

1



2.   CARLOS RIVERA is a resident of Dade County and is sui juris.

3.   The CITY OF MIAMI POLICE DEPARTMENT is a division or department within the City of Miami, a municipality incorporated under the laws of the State of Florida, and sui juris.

4.   JULIO PINERA was a police officer with the City of Miami Police Department and is sui juris.

5.   BARTHOLOMEW GUNDERMAN was a police officer with the City of Miami Police Department and is sui juris.

6.   SGT. CLEMENTE was a police officer with the City of Miami Police Department and is sui juris.

7.   VINCENT FARRELL was a police officer with the City of Miami Police Department and is sui juris.

8.   X was a police officer with the City of Miami Police Department, but who cannot be identified by name at this time.  Plaintiff remembers him as a tall, blond officer, who was wearing tape to obstruct his name tag, and who was removed from the scene of the incident in question by other officers.

9.   Y was a police officer with the City of Miami Police Department, who cannot be identified by name because he had obstructed his name tag to avoid identification.

10.   In early May, 1995, the United States Government announced a radical change in official policy concerning

2

Cuban refugees fleeing the Communist regime of Fidel Castro in Cuba.  Under the new policy, any Cuban found on a vessel or makeshift sailing or drifting apparatus fleeing Cuba bound for the United States would be subject to summary expatriation back to Cuba based upon interviews undertaken onboard United States Coast Guard vessels. Under the previous policy, the Cuban refugees would be taken to United States soil where they would be allowed to file for political asylum, and where their presence would trigger the applicability of the Cuban Assimilation Act of 1966.

11.  Within the Cuban-American exile community in Miami-Dade County, this policy change was greeted with widespread dismay and disapproval.  The official assurances that would ensure that no refugee would be returned who faced imprisonment or persecution in Cuba did little to allay their fears for the safety of the refugees.

12.  In support of their right to peacefuly petition the Government as well as exercise their freedom of speech guaranteed by the First Amendment to the United States Constitution, a series of non-violent protests were planned. For the two or three days preceding May 10, 1995, those protests consisted of demonstrators sitting down in the middle of public streets, and not allowing traffic to move past them. Elements of the public, who were inconvenienced

3

by the traffic slow-downs, made their feelings known to the media and local elected officials.

13.    A demonstration was planned to occur at or around Herald Plaza in the City of Miami in front of the Miami Herald Building to continue these protests on May 10, 1995. Plaintiff, CARLOS RIVERO, decided to exercise his First Amendment rights by participating in this demonstration.

14.    Certain officials with positions of responsibility with the City of Miami developed a strategy to discourage the continuation of these demonstrations.  There was also a perceived need for the City of Miami, within which most of the road-blockages had occurred, to demonstrate to the general population its willingness to arrest persons engaging in these constitutionally protected activities.

15.    Officials representing the CITY OF MIAMI POLICE DEPARTMENT promised arrests at the Herald Plaza demonstrations.

16.    The police officers who were assigned as security to the Herald Plaza demonstration had received no specific training in managing a peaceful demonstration.  Their training extended only the handling of a violent riot.  The result was a policy of zero tolerance towards the demonstrators by the CITY OF MIAMI POLICE DEPARTMENT.

4

17. Representatives of the CITY OF MIAMI POLICE DEPARTMENT debriefed the police officers who were assigned to provide security for the Herald Plaza demonstration.

18. Officers PINERA, GUNDERMAN, CLEMENTE, FARRELL, X and Y were police officers assigned as security for the Herald Plaza demonstration. Like most of the officers so assigned, they were equipped for a riot.

19. The demonstration at the Herald Plaza proceeded without incident. At its conclusion, the demonstrators began walking toward the places where their cars were parked.

20. During the time that the demonstration was breaking up, City of Miami Police officers waded through the crowd and attempted to place another individual under arrest. That person was not known to the police officers by name, and was not committing any crime at the time of his arrest.

21. Plaintiff observed the police officers making an arrest for what appeared to be no reason. The individual being arrested called out to Plaintiff for assistance since he was without knowledge of any reason for the arrest.

22. Plaintiff requested that the arresting officers explain the reason for the actions they were taking. Without verbal response, police officers, including Defendants, physically grabbed and restrained Plaintiff, punching and

5

striking him with nightsticks, in order to place him under arrest as well.

23. After placing Plaintiff under arrest, Defendants and other police officers continued to strike him with their fists and nightsticks.

24. As a result of this unnecessary beating, Plaintiff suffered physical injury.

25. Plaintiff has been compelled to retain an attorney in order to obtain justice in this matter and a vindication of his rights, and is obligated to pay him a reasonable fee.

<u>COUNT I</u>

<u>CITY OF MIAMI POLICE DEPARTMENT</u>

**VIOLATION OF CIVIL RIGHTS, 28 U.S.C., SECTION 1983**

Plaintiff realleges and reavers paragraphs 1 through 25 as fully stated herein, and alleges further:

26. The need to arrest demonstrators at Herald Plaza was an official policy of the City of Miami.

27. The City officials responsible for directing this policy on May 10, 1995, included the Chief of Police and other high-ranking police officers in the CITY OF MIAMI POLICE DEPARTMENT.

28. The City officials who wanted to take action against the demonstrators were aware that the City of Miami Police officers were not specially trained to handle peaceful protests.

6

29. That Plaintiff was arrested, in part, because of the compliance of the police officers involved, including Defendants, with the official policy of the City of Miami on May 10, 1995.

30. The failure to have trained the police officers, including Defendants, who were assigned to the Herald Plaza demonstration in procedures for handling peaceful protests, as opposed to violent riots, evidenced a deliberate indifference to the rights of Plaintiff and others.

31. Those persons responsible for determining the training to be given officers for the CITY OF MIAMI POLICE DEPARTMENT knew or should have known of the need to train in the area of managing peaceful protests or demonstrations.

32. As a proximate cause of the official policy of the CITY OF MIAMI POLICE DEPARTMENT on May 10, 1995, Plaintiff's constitutional right to peacefully assemble, freedom of speech, and freedom from unreasonable arrest and/or beating on the part of police officers were violated.

33. As a proximate cause of the failure of the CITY OF MIAMI POLICE DEPARTMENT to adequately train its police officers in handling peaceful demonstrations, Plaintiff's constitutional right to peacefully assemble, freedom of speech, and freedom from unreasonable arrest and/or beating on the part of police officers were violated.

7

34. On May 10, 1995, supervising officers of the CITY OF MIAMI POLICE DEPARTMENT allowed some of the officers, including X Defendant and Y Defendant, to hide or obscure their name tags to prevent identification.

35. After Plaintiff's arrest, supervisory and non-supervisory officers in their supervisor's presence facilitated the quick escape of X Defendant from the scene in order to prevent his identification.

WHEREFORE, Plaintiff requests this Court issue judgment in his favor, award all damages, compensatory, incidental and punitive, as he may be entitled under the law, costs, reasonable attorney's fees, and such other relief as the Court deems fair and just.

COUNT II

ALL DEFENDANTS

**FALSE ARREST**

Plaintiff realleges and reavers paragraphs 1 through 25 as fully stated herein, and alleges further:

36. Plaintiff was arrested without probable cause.

37. The arresting officers acted willfully and maliciously, and continued in bad faith.

38. As a consequence of this false arrest, Plaintiff has been injured.

39. As a result of his arrest, Plaintiff was prosecuted in the Circuit Court for the Eleventh Judicial

8

Circuit in Miami under case name, <u>State v. Carlos Rivero</u>, Case No. F95-14731, for battery on a law enforcement officer, in violation of Florida Statutes, Sections 784.03 and 784.07 (Counts I and II), resisting arrest with violence, in violation of Florida Statutes, Section 783.01 (Ccount III), and disorderly conduct (Count IV).

40.   As a result of this arrest, Plaintiff had to post bond.

41.   As a consequence of this arrest and prosecution, Plaintiff had to retain counsel to defend him, and became obligated to pay a fee.

42.   As a consequence of his arrest, Plaintiff suffered severe emotional distress, pain and suffering, and humiliation.

43.   On March 25, 1998, the State <u>nolle prossed</u> the criminal case.

44.   These police officers, including these Defendant, acted willfully and maliciously.

45.   X Defendant, who could not be identified because his name tag was covered, was removed by other unidentified police officers from the scene in order to prevent his identity from being exposed.

46.   Y Defendant, also could not be identified because he had covered his name tag.

WHEREFORE, Plaintiff requests this Court issue judgment in his favor, award all damages, compensatory, incidental and punitive, as he may be entitled under the law, costs, reasonable attorney's fees, and such other relief as the Court deems fair and just.

COUNT III

ALL DEFENDANTS

**EXCESSIVE FORCE INCIDENT TO ARREST**

Plaintiff realleges and reavers paragraphs 1 through 25 and 36 through 46 as fully stated herein, and alleges further:

47. Plaintiff was placed under arrest by the actions of several police officers, including Defendants, in grabbing and attempting to handcuff him. In the process, these police officers, including Defendants, struck Plaintiff with their hands, feet and nightsticks.

48. The beatings perpetrated on Plaintiff by Defendants was unnecessary and excessive, and went beyond any perceived need to restrain or arrest him.

49. Defendants acted willfully and maliciously in employing excessive force to effectuate Plaintiff's arrest.

50. As a proximate cause of the excessive force used by Defendants, Plaintiff has suffered serious physical injury.

10

WHEREFORE, Plaintiff requests this Court issue judgment in his favor, award all damages, compensatory, incidental and punitive, as he may be entitled under the law, costs, reasonable attorney's fees, and such other relief as the Court deems fair and just.

### COUNT IV

### ALL DEFENDANTS

**BATTERY AFTER ARREST**

Plaintiff realleges and reavers paragraphs 1 through 25 and 36 through 50 as fully stated herein, and alleges further:

51.  After Plaintiff was in custody, police officers, including Defendants, continued to punch, kick, and strike him with nightsticks.

52.  These actions by Defendants were unreasonable, and not related to any justifiable cause.

53.  These police officers, including these Defendants, acted willfully and maliciously.

54.  As a proximate cause of these actions, Plaintiff suffered physical injury.

WHEREFORE, Plaintiff requests this Court issue judgment in his favor, award all damages, compensatory, incidental and punitive, as he may be entitled under the law, costs,

11

reasonable attorney's fees, and such other relief as the Court deems fair and just.

                              Respectfully submitted,

                              CHARLES G. WHITE, P.A.
                              Counsel for Plaintiff
                              2250 S.W. Third Avenue
                              Suite 150
                              Miami, Florida 33129
                              Tel:  (305) 856-1211
                              Fax:  (305) 856-0171
                              Florida Bar No. 334170



                              _____
                              CHARLES G. WHITE, ESQ.

12

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

## 99-1330
## CIV-MOORE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

CARLOS RIVERO

**DEFENDANTS** CITY OF MIAMI, POLICE DEPT.
JULIO PINERA, BARTHOLOMEW GUNDERMAC
SGT. CLEMENTE, VINCENT FARRELL,
X and Y

**(b)** Miami-Dade

(EXCEPT IN US PLAINTIFF CASES)

Miami-Dade

(IN US PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A: Dade | 1:99cv-1330 / KMM / O'Sullivan

**(c)** Charles G. White    (305)88-124
2252 SW 3 Avenue Suite 150
Miami, FL 33129

## MAGISTRATE JUDGE
## O'SULLIVAN

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE) MONROE   BROWARD   PALM BEACH   MARTIN   ST LUCIE   INDIAN RIVER   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ | ☒ | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 | ☐ 362 | ☐ 620 | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 | | ☐ 625 | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 | | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment | ☐ 320 | | ☐ 630 | | ☐ 460 Deportation |
| | | ☐ 368 | ☐ 640 | **A PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare | ☐ 330 | | ☐ 650 | | |
| ☐ 152 Recovery of Defaulted | | | ☐ 660 | ☐ 820 | ☐ 810 Selective Service |
| | ☐ 340 | **PERSONAL PROPERTY** | | ☐ 830 | ☐ 850 Securities/Commodities/Exchange |
| | ☐ 345 | ☐ 370 | ☐ 690 | ☐ 840 | |
| ☐ 153 | | ☐ 371 | | | ☐ 875 Customer Challenge 12 USC 3410 |
| | ☐ 350 | ☐ 380 | **A LABOR** | **B SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 160 | ☐ 355 | | ☐ 710 | ☐ 861 | ☐ 892 Economic Stabilization Act |
| ☐ 190 Other Contract | | ☐ 385 | | ☐ 862 | ☐ 893 Environmental Matters |
| ☐ 195 Contract Product Liability | ☐ 360 | | ☐ 720 | ☐ 863 | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 | ☐ 895 Freedom of Information Act |
| ☐ 210 | ☐ 441 | ☐ 510 | ☐ 730 | ☐ 865 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 | ☐ 442 | | | | |
| ☐ 230 | ☐ 443 | **HABEAS CORPUS** | ☐ 740 | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 | | ☐ 530 | | | |
| ☐ 245 | ☐ 444 | ☐ 535 | ☐ 790 | ☐ 870 Taxes | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☒ 440 | ☐ 540 | ☐ 791 | ☐ 871 IRS—Third Party | A OR B |
| | | ☐ 550 | | | |
| | | ☐ 555 | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. § 1983

LENGTH OF TRIAL
via 5 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint

**JURY DEMAND:** ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

JUDGE                    DOCKET NUMBER

DATE

**FOR OFFICE USE ONLY**

$150.00   802134

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

05/10/99